UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL BROWN,

               Plaintiff,

        - against -

CITY OF NEW YORK,

               Defendant.

**ORDER**

21 Civ. 4632 (PGG) (SLC)

PAUL G. GARDEPHE, U.S.D.J.:

        In this Section 1983 action against the City of New York (the "City"), pro se Plaintiff Paul Brown alleges violations of his "civil and human rights" while in pretrial detention at the Anna M. Kross Center at Rikers Island ("AMKC"). (Cmplt. (Dkt. No. 1)) Plaintiff contends that the City violated his rights by not implementing appropriate COVID-19 protocols at the AMKC. (Id.)

        The City moved for summary judgment (Mot. (Dkt. No. 33)), and this Court referred the motion to Magistrate Judge Sarah Cave for a Report & Recommendation ("R&R"). (Dkt. No. 43)  In a January 30, 2023 R&R, Judge Cave recommends that the City's motion be granted. (R&R (Dkt. No. 63))  Plaintiff has submitted objections to the R&R. (Pltf. Obj. (Dkt. No. 65))

        For the reasons stated below, Plaintiff's objections to the R&R will be overruled, the R&R will be adopted in its entirety, and the City's motion for summary judgment will be granted.

## BACKGROUND

I.  **THE COMPLAINT'S ALLEGATIONS AND THE R&R'S FACTUAL STATEMENT**[1]

Plaintiff was detained at the AMKC from December 20, 2020 to May 13, 2021. (R&R (Dkt. No. 63) at 2 (citing Cmplt. (Dkt. No. 1) at 4; Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 2; Santus Decl. (Dkt. No. 41) ¶ 6)) When Plaintiff was admitted to the AMKC, he was given a copy of the Inmate Handbook, which describes the steps in the Department of Correction's ("DOC") Inmate Grievance Resolution Process ("IGRP"). (Id. (citing Mills Decl. (Dkt. No. 37) ¶¶ 42-43))

The Complaint alleges that Plaintiff's "[h]ealth [was] at [r]isk at an all[-]time [h]igh [d]uring [his] incarceration [at the AMKC]." (Cmplt. (Dkt. No. 1) at 4)  According to the Complaint, there was "obvious [d]isregard of the [s]ocial [d]istance [r]ules placed in the [d]orms of Rikers Island," and this alleged disregard violated Plaintiff's "[h]uman [r]ights." (Id.) The Complaint further alleges that there was "[n]o [s]ocial [d]istanc[ing], [n]o testing, [and n]o [personal protective equipment ('PPE')] [d]istributed to any [d]etainee" while Plaintiff was detained at the AMKC. (Id.) Because Plaintiff is asthmatic, he was "in fear for [his] life." (Id. at 5) Plaintiff seeks $10 million in damages "for the blatant [d]isregard of [his] human [r]ights during [a] [p]andemic." (Id.)

---

[1] Because the parties have not objected to Judge Cave's factual statement, this Court adopts it in full. See Silverman v. 3D Total Solutions, Inc., No. 18 Civ. 10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., No. 16 Civ. 4425 (VEC) (SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

In Judge Cave's R&R, however, she finds that – while Plaintiff was detained at the AMKC – he was screened for COVID-19 symptoms at least seventeen times, and he tested negative at least three times. (R&R (Dkt. No. 63) at 2 (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶¶ 67-68)) Plaintiff's medical records – from before and during his detention at the AMKC – likewise contain no evidence that he was ever diagnosed with, had symptoms of, or sought medical care for asthma. (Id. at 2-3 (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 69; Sarokin Decl., Ex. 1 (Dkt. No. 40-1) at 144, 149))

Moreover, the City's Correctional Health Services ("CHS") "conducts medical evaluations of detainees and advises DOC of the appropriate housing facility for any person with a medical condition who might need additional medical services or care." (Id. at 3 (citing Mills Decl. (Dkt. No. 37) ¶ 7)) Plaintiff's placement at the AMKC – a general population housing area – "reflects CHS's determination that he did not need specialized care." (Id. at 4 (citing Mills Decl. (Dkt. No. 37) ¶ 7))

"In early 2020, DOC, in conjunction with CHS, prepared the COVID-19 Action Plan." (Id. at 4 (citing Mills Decl. (Dkt. No. 37) ¶ 8)) "Beginning on or around May 4, 2020, any individual newly admitted to a DOC facility – including [the] AMKC – was offered a COVID-19 test." (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶¶ 5, 42; Mills Decl. (Dkt. No. 37) ¶ 9)) New detainees who agreed to be tested were held in a housing area for individuals awaiting COVID-19 test results, and were transferred to general population housing only after testing negative. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶¶ 5, 42; Sarokin Decl., Ex. 2 (Dkt. No. 39-2) ¶ 8)) New detainees who declined testing spent ten to fourteen days in quarantine before being transferred. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 5; Sarokin Decl., Ex. 2 (Dkt. No. 39-2) ¶ 8)) New detainees who tested positive or exhibited symptoms of COVID-19 were

placed in a special housing unit. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 19; Sarokin Decl., Ex. 2 (Dkt. No. 39-2) ¶¶ 11-12)) These protocols were in place during the entire period that Plaintiff was detained at the AMKC. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 5; Mills Decl. (Dkt. No. 37) ¶ 9))

CHS offered testing at other times, including at a detainee's request, and monitored detainees for COVID-19 symptoms. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶¶ 6, 43; Mills Decl. (Dkt. No. 37) ¶¶ 10-12; Sarokin Decl., Ex. 2 (Dkt. No. 39-2) ¶ 9)) When a detainee tested positive for COVID-19, CHS advised DOC to transfer the detainee to a designated area for detainees infected with COVID-19, and to designate the exposed housing area as Asymptomatic Exposed ("AE"). (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶¶ 49-50; Sarokin Decl., Ex. 2 (Dkt. No. 39-2) ¶¶ 16-17)) The AE units were maintained as "'living cohorts'" for fourteen days, and detainees were offered additional testing to identify new cases. (Id. at 4-5 (citing (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 51; Sarokin Decl., Ex. 2 (Dkt. No. 39-2) ¶ 18)) Moreover, DOC staff members were screened, tested, and informed of COVID-19 precautions and steps to take following exposure to an infected individual. (Id. at 5 (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶¶ 12-16, 54-60; Mills Decl. (Dkt. No. 37) ¶¶ 16-20; Sarokin Decl., Ex. 2 (Dkt. No. 39-2) ¶¶ 21-27))

The COVID-19 Action Plan included informational, cleaning, and sanitizing protocols. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 9; Mills Decl. (Dkt. No. 37) ¶ 13)) For example, posters throughout the AMKC informed staff and detainees about COVID-19 symptoms and suggested precautions; trained work crews conducted daily cleaning and sanitizing, including cleaning and sanitizing contact surfaces every two hours, and shower areas three times daily; and DOC provided cleaning supplies in the housing units, a bar of soap to each

detainee, and sanitizing solutions and supplies in each unit's janitor closet, except in units where access to the supplies presented a security issue. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶¶ 9, 20-25; Mills Decl. (Dkt. No. 37) ¶¶ 13, 25-26, 28-30; Mills Decl., Ex. 1 (Dkt. No. 37-1) at 2-3, 7-13)) Since March 2020, DOC has operated with one-hundred percent outside air, and upgraded all air filters, in accordance with Centers for Disease Control and Prevention recommendations. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 27; Mills Decl. (Dkt. No. 37) ¶ 32))

The City also made efforts to reduce the detainee population. "Following a combined effort among the courts, the Mayor's Office, the District Attorney's Office, the Legal Aid Society, and DOC, approximately 1,500 non-violent incarcerated persons were released between March 16, 2020 and June 4, 2020 (before [Plaintiff] arrived at [the] AMKC)." (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 28; Mills Decl. (Dkt. No. 37) ¶ 33)) To further facilitate social distancing, a housing unit that had been closed was reopened from November 2020 through May 2021 to house detainees who tested positive for COVID-19. (Id. at 6 (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶¶ 30, 46; Mills Decl. (Dkt. No. 37) ¶ 35)) DOC also worked to ensure that, where possible, there was an empty bed between detainees, and encouraged detainees to refrain from sitting on each other's beds and to sleep head-to-foot for increased separation. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 31; Mills Decl. (Dkt. No. 37) ¶ 36)) DOC also painted social distancing cues on chairs and benches, posted notices about the social distancing guidelines, and trained officers to communicate about the purpose of social distancing measures. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶¶ 32-33; Mills Decl. (Dkt. No. 37) ¶¶ 37-38)) Masks were provided to detainees, and detainees were required to wear masks during recreation. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 34; Mills Decl. (Dkt. No. 37) ¶ 39))

5

Officers were required to wear masks while inside DOC facilities – other than while eating or drinking – and faced discipline for not doing so. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 34; Mills Decl. (Dkt. No. 37) ¶ 39))

Beginning in January 2021, CHS began offering the COVID-19 vaccine to high-risk detainees and to DOC staff, and in March 2021, to all detainees. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶¶ 10-11, 17, 48; Mills Decl. (Dkt. No. 37) ¶¶ 14-15; Mills Decl., Ex. 6 (Dkt. No. 37-6))) DOC encourages detainees to receive the vaccine. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 15)) As of October 29, 2021, a vaccine mandate required all City employees to become vaccinated, on a rolling basis. (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 18; Mills Decl. (Dkt. No. 37) ¶ 22))

The COVID-19 Action Plan was enforced through inspections by DOC and the New York State Commission of Correction (the "State Commission"). (Id. (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶¶ 26, 35-36; Mills Decl. (Dkt. No. 37) ¶¶ 31, 40)) After several inspections, the State Commission observed that DOC employees, detainees, and visitors were being screened for COVID-19, signage was posted, disinfection procedures were in place, and face coverings were used. (Id. at 6-7 (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶¶ 35; Mills Decl. (Dkt. No. 37) ¶ 40)) The State Commission made recommendations regarding the use of PPE and hand sanitizer, and DOC addressed those recommendations. (Id. at 7 (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 36; Mills Decl. (Dkt. No. 37) ¶ 40; Mills Decl., Ex. 8 (Dkt. No. 37-8)))

"Between December 20, 2020 and April 22, 2021, [Plaintiff] filed two grievances related to the COVID-19 pandemic." (Id. at 3 (citing Santus Decl. (Dkt. No. 41) ¶ 4; Def. R. 56.1 Stmt. (Dkt. No. 35) ¶ 74)) In an April 6, 2021 grievance, Plaintiff complained: "'Social Distancing Not Being Upheld[,]' and 'I do not have 6 feet between other detainees.'" (Id. at 3

6

(alterations in original) (quoting Santus Decl. (Dkt. No. 41) ¶ 4))  The DOC Office of Constituent Grievance Services ("OGCS") informed Plaintiff that his grievance had been sent to the AMKC Warden's office.  (Id. (citing Santus Decl. (Dkt. No. 41) ¶ 4))

In an April 16, 2021 grievance, Plaintiff states:

> My complaint is about social distancing.  How is it that the whole world can be socially distan[ced] but Rikers.  I can't do it[.]  [W]e have been told social distance is over in here.  Having a shot or a "vaccine" shot doesn't mean that [the] virus and its variants can[not] be spread[][.]  [W]e have 42 people in this dorm[;] the max[imum] was supposed to b[e] 25.

(Id. (quoting Santus Decl. (Dkt. No. 41) ¶ 5))  Plaintiff's second grievance was returned to him as duplicative of his first grievance.  (Id. (citing Santus Decl. (Dkt. No. 41) ¶ 5))

On May 13, 2021, Plaintiff was discharged from the AMKC "'[d]ue to extraordinary circumstances posed by the COVID-19 pandemic.'"  (Id. (alteration in original) (quoting Santus Decl. (Dkt. No. 41) ¶ 6))  At the time of his discharge, the OGCS had not yet closed its investigation into Plaintiff's first grievance.  (Id. (citing Santus Decl. (Dkt. No. 41) ¶ 6))

## II.     THE MAGISTRATE JUDGE'S R&R

"Liberally construing the Complaint," Judge Cave finds that it "assert[s] a claim under Section 1983 that the City violated [Plaintiff's] Fourteenth Amendment rights by failing to implement appropriate COVID-19 protocols at [the] AMKC."  (R&R (Dkt. No. 63) at 22 (citing Cmplt. (Dkt. No. 1) at 2-5; Massey v. City of New York, No. 20 Civ. 5665 (GBD) (DF), 2021 WL 4943564, at *1 (S.D.N.Y. Aug. 30, 2021), report and recommendation adopted, No. 20 Civ. 5665 (GBD) (DF), 2021 WL 4459459 (S.D.N.Y. Sept. 29, 2021), aff'd, No. 20 Civ. 5665 (GBD) (DF), 2021 WL 5234977 (S.D.N.Y. Nov. 9, 2021)))  Judge Cave recommends that the City's motion for summary judgment be granted because Plaintiff has not offered evidence that creates

a genuine issue of material fact as to his conditions of confinement claim and – in any event – Plaintiff did not exhaust his administrative remedies. (Id. at 26-28)

    A.    **Conditions of Confinement Claim**

Judge Cave notes that – "in evaluating a conditions of confinement claim based on COVID-19" – "'[t]he relevant inquiry is whether a petitioner has shown a substantial risk of serious harm from COVID-19 at a correctional facility in light of the countermeasures that the facility has in place.'" (Id. at 24 (alteration in original) (quoting Morales v. Brann, No. 20 Civ. 10126 (VEC) (SDA), 2022 WL 18108561, at *4 (S.D.N.Y. Dec. 15, 2022), report and recommendation adopted, No. 20 Civ. 10126 (VEC), 2023 WL 35255 (S.D.N.Y. Jan. 4, 2023)))

Given the City's evidence concerning the COVID-19 Action Plan, Judge Cave finds that "it was incumbent on [Plaintiff] to come forward with evidence showing that a genuine issue of material fact exists as to whether the measures that DOC and CHS took were objectively deficient." (Id. (citing Wilson v. Annucci, No. 18 Civ. 391 (LEK) (TWD), 2020 WL 1979210, at *6-7 (N.D.N.Y. Apr. 23, 2020), report and recommendation adopted, No. 18 Civ. 391 (LEK) (TWD), 2020 WL 5229375 (N.D.N.Y. Sept. 2, 2020))) She concludes that Plaintiff did not meet his burden noting, inter alia, that Plaintiff's "medical records, which span a period of more than two years and the entire time of his confinement at AMKC, do not show any symptoms nor diagnosis of asthma." (Id.) Judge Cave goes on to find that Plaintiff "'has not shown [that] he has a condition or conditions that put him at increased risk of serious illness should he be infected.'" (Id. (alteration in original) (quoting Williams v. Rodriguez, No. 20 Civ. 806 (VLB), 2021 WL 2037966, at *8 (D. Conn. May 21, 2021)))

In reaching this conclusion, Judge Cave notes that Plaintiff "does not dispute that he was screened for COVID-19 symptoms" at least seventeen times and was tested – with

negative results – three times (id. at 25 (citing Def. R. 56.1 Stmt. (Dkt. No. 35) ¶¶ 67-68)), or that "'the spread of COVID-19 has been greatly diminished with the introduction of vaccines in the general public' and in the DOC facilities, including the AMKC." (Id. (quoting Williams, 2021 WL 2037966, at *8)) Judge Cave further finds that "DOC and its related City agencies 'have taken substantial measures to reduce the spread of the virus on Rikers Island, and have had success in doing so.'" (Id. (quoting People ex rel. Stoughton v. Brann, 185 A.D.3d 521, 525 (1st Dep't 2020); citing People ex rel. Coleman v. Brann, 68 Misc. 3d 204, 213-14 (Bronx Cnty. Sup. Ct. 2020)))

Given this evidence, Judge Cave concludes that "no reasonable jury could find that [Plaintiff] . . . meets the objective prong of his conditions of confinement claim." (Id.)

As to the subjective prong of Plaintiff's conditions of confinement claim, Judge Cave finds that "there is no evidence that the City 'intentionally . . . impose[d] the alleged condition[s], or recklessly failed to act with reasonable care to mitigate the risk that the condition[s] posed to' him and other AMKC detainees." (Id. (alterations and omission in original) (quoting Caraballo v. Dep't of Corr. City of New York, No. 22 Civ. 971 (JLR), 2022 WL 16555313, at *4-5 (S.D.N.Y. Oct. 31, 2022))) Judge Cave goes on to find that the "the City has 'adduced significant evidence as to countermeasures put in place by DOC and CHS to minimize the risk to inmates of COVID-19[]'" (id. (quoting Morales, 2022 WL 18108561, at *4), and that even if the City's "'response to COVID-19 was imperfect, or negligent, it is not enough to support a finding of deliberate indifference.'" (Id. at 26 (quoting Jones v. Westchester Cnty., No. 20 Civ. 8542 (PMH), 2022 WL 1406591, at *4-5 (S.D.N.Y. May 4, 2022); citing Gibson v. Rodriguez, No. 20 Civ. 953 (KAD), 2021 WL 4690701, at *7 (D. Conn. Oct. 7, 2021);

Stoughton, 185 A.D.3d at 525)) Accordingly, Judge Cave concludes that "no reasonable jury could find that [Plaintiff] meets the subjective prong of a conditions of confinement claim." (Id.)

Having found that Plaintiff "has not demonstrated that a genuine issue of material fact exists as to his conditions of confinement claim under Section 1983," Judge Cave recommends that the City's motion for summary judgment as to this claim be granted. (Id.) Plaintiff's Monell claim likewise fails because Plaintiff has not demonstrated any underlying constitutional violation. (Id.)

**B.      Exhaustion of Administrative Remedies**

Judge Cave concludes that Plaintiff's failure to exhaust his administrative remedies "provides an alternative basis to grant the [City's summary judgment] [m]otion." (Id. at 28)

Judge Cave notes that, "[a]lthough [Plaintiff] submitted at least two grievances . . . , neither the evidence the City has submitted nor the [l]etters [Plaintiff has submitted] demonstrate that he completed the appeals process under the IGRP, which is necessary for a finding that he exhausted his administrative remedies." (Id. at 27 (citing Santus Decl. (Dkt. No. 41) ¶¶ 4-5; Sept. 2, 2022 Pltf. Ltr. (Dkt. No. 46) at 3; Massey, 2021 WL 4943564, at *7)) In this regard, Judge Cave points out that Plaintiff filed the Complaint sixteen days after his first grievance, and five days after his second grievance, which is "less than the [twenty] days or more that courts have recognized is necessary to afford the DOC an opportunity to complete the IGRP process." (Id. (citing Thompson v. Carter, No. 21 Civ. 8982 (LGS), 2022 WL 2533112, at *3 (S.D.N.Y. July 7, 2022); Miller v. Annucci, No. 17 Civ. 4698 (KMK), 2019 WL 4688539, at *12 (S.D.N.Y. Sept. 26, 2019))) Accordingly, Judge Cave finds that Plaintiff "'could not have participated in the entire grievance process [under the IGRP] before filing his [C]omplaint.'" (Id.

(alterations in original) (quoting Stokes v. de Blasio, No. 17 Civ. 7890 (JGK), 2019 WL 132279, at *3 (S.D.N.Y. Jan. 8, 2019); citing Cary v. City of New York, No. 17 Civ. 6443 (RWS), 2018 WL 1581988, at *3 (SD.N.Y. Mar. 27, 2018); Pierre-Louis v. Martinez, No. 12 Civ. 2240 (NGG) (LB), 2014 WL 4161960, at *4-5 (E.D.N.Y. Aug. 19, 2014)))

Construing Plaintiff's submissions liberally, Judge Cave also considers whether he contends that exhaustion should be excused on the ground that "the DOC officials' failure to address his past grievances means that the administrative remedies under the IGRP 'should be considered unavailable to him'" under Ross v. Blake, 578 U.S. 632 (2016). (Id. at 28 (quoting Massey, 2021 WL 4943564, at *9)) Assuming arguendo that Plaintiff makes such an argument, Judge Cave finds that he has not demonstrated that the IGRP was unavailable to him. (Id.) Judge Cave reasons that Plaintiff claims to have "filed as many as five grievances, and that he received a response to at least one of them, . . . demonstrating that the IGRP procedures were not only available, but that he knew how to employ them and simply chose not to follow them to completion." (Id. (citing Sept. 2, 2022 Pltf. Ltr. (Dkt. No. 46) at 3; Perez v. City of New York, No. 14 Civ. 07502 (LGS), 2015 WL 3652511, at *4 (S.D.N.Y. June 11, 2015))) Judge Cave adds that "nothing in [Plaintiff]'s submissions suggests that 'any [] official prevented [him] from filing a grievance' or completing the remaining steps in the IGRP[,]" and that she "cannot discern any other permissible ground to excuse [Plaintiff]'s failure to comply with the IGRP." (Id. (second and third alterations in original) (quoting Perez, 2015 WL 3652511, at *4))

### III.     PLAINTIFF'S OBJECTIONS TO THE R&R

On February 2, 2023, Plaintiff submitted objections to Judge Cave's R&R. (Pltf. Obj. (Dkt. No. 65)) Plaintiff says that he objects to the R&R "based on all fact[s] that [he] ha[s] stated about the poor [q]uality of [l]iving in the AMKC . . . building on Rikers Island." (Id. at 1)

11

Plaintiff rehashes the arguments he made before Judge Cave, including that he has a right to "basic sanitary and safety conditions," and that the AMKC did not provide for appropriate social distancing or other COVID-19 prevention measures. (Compare id. at 1-2 with Sept. 2, 2022 Pltf. Ltr. (Dkt. No. 46) at 1-2) (complaining that social distancing "was impossible," that hand sanitizer and soap were not provided, and that inadequate masks were provided)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Inv. Servs., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)). A decision is "clearly erroneous" when, "'upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed.'" United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (internal quotations omitted) (quoting United States v. Garcia, 413 F.3d 201, 222 (2d Cir. 2005)).

Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage

the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (second alteration in original) (quoting Vega v. Artuz, 97 Civ. 3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error." IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343 (WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (quoting Vega, 2002 WL 31174466, at *1) ("Reviewing courts should review a report and recommendation for clear error where objections are 'merely perfunctory responses,' . . . 'rehashing . . . the same arguments set forth in the original petition.'").

B. **Summary Judgment Standard**

Summary judgment is warranted where the moving party "shows that there is no genuine dispute as to any material fact" and that that party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). "'[W]here the non[-]moving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the non[-]moving party's claim.'" Lesavoy v. Lane, No. 02 Civ. 10162,

2008 WL 2704393, at *7 (S.D.N.Y. July 10, 2008) (quoting Bay v. Times Mirror Mags., Inc., 936 F.2d 112, 116 (2d Cir. 1991)).

In deciding a summary judgment motion, the Court "'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)). However, a "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (alteration and omissions in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)). "'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" Eviner v. Eng, No. 13 Civ. 6940 (ERK), 2015 WL 4600541, at *6 (E.D.N.Y. July 29, 2015) (quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)). A moving party can demonstrate the absence of a genuine issue of material fact "'in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quoting Farid v. Smith, 850 F.2d 917, 924 (2d Cir. 1988)).

Pro se submissions are "construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)). A pro se litigant must, however, still "meet the requirements necessary to defeat a motion for summary

judgment." Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks and citation omitted).

## II. ANALYSIS

As discussed above, Plaintiff's objections merely reiterate and rehash his original arguments before Judge Cave. Accordingly, this Court reviews the R&R for clear error. See Phillips, 955 F. Supp. 2d at 211; IndyMac Bank, F.S.B., 2008 WL 4810043, at *1; Ortiz, 558 F. Supp. 2d at 451.

The evidence demonstrates that DOC and the AMKC took extraordinary steps to address the risks that the COVID-19 pandemic presented to inmates. Although Plaintiff claims that those measures were inadequate as to him – because he is asthmatic – there is no evidence in the record that Plaintiff suffers from asthma. (R&R (Dkt. No. 63) at 24) In sum, there is no evidence suggesting that DOC and the AMKC were deliberately indifferent to Plaintiff's medical condition. (Id. at 24-26) There is therefore no error in Judge Cave's determination that the City is entitled to summary judgment on Plaintiff's Section 1983 and related Monell claim.

There is likewise no error in Judge Cave's determination that Plaintiff did not exhaust his administrative remedies. The IGRP provides for four levels of review. (Id. at 19-21) It is obvious that Plaintiff did not exhaust his administrative remedies, because he filed the Complaint within days of filing his first grievance. (Id. at 27) Nor has Plaintiff provided any basis for this Court to excuse him from complying with the grievance procedures. (Id. at 28) Accordingly, Judge Cave correctly determined that Plaintiff's failure to exhaust his administrative remedies provides a separate, alternative ground for granting the City's motion for summary judgment.

## **CONCLUSION**

For the reasons stated above, this Court adopts the R&R in its entirety, and the City is granted summary judgment on Plaintiff's claims. The Clerk of Court is directed to mail a copy of this Order to pro se Plaintiff Brown at the address indicated on the docket, terminate the motion at Dkt. No. 33, and close this case.

Dated: New York, New York
       March 14, 2023

                                        SO ORDERED.

                                        _____
                                        Paul G. Gardephe
                                        United States District Judge